UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


JOSEPH T. KVASNE,                    )        Case No. 1:08CV2019
                                     )
            Petitioner,              )
                                     )
     vs.                             )        JUDGE PETER C. ECONOMUS
                                     )        (Magistrate Judge McHargh)
TERRY COLLINS,                       )
            Warden,                  )
                                     )
                                     )
            Respondent.              )        REPORT AND
                                     )        RECOMMENDATION
                                     )

McHARGH, Mag.J.

     The petitioner Joseph Kvasne ("Kvasne") filed a petition for a writ of habeas

corpus arising out of his 2005 convictions for the crime of abduction, in the

Cuyahoga County (Ohio) Court of Common Pleas.  (Doc. 1.)  In his petition, Kvasne

raises three grounds for relief:

     1.  Double jeopardy will be violated if Petitioner is required to go to
     trial for domestic violence.

     2.  Conviction for abduction as a lesser offense of kidnapping violated
     federal due process.

     3.  Assuming, arguendo, that a procedural default has arisen regarding
     the second ground for relief, then trial counsel and appellate counsel,

respectively, were ineffective for not having identified the controlling federal constitutional authority.

([Doc. 1](), at §12.)


## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following factual background:

This case results from an altercation that occurred between Kvasne and the victim, D.J.  D.J. testified that beginning in the summer of 2003, she and Kvasne shared a romantic relationship as "boyfriend" and girlfriend.  Although Kvasne worked most weekdays at a job in Michigan, he returned to Cleveland on weekends to live with her in her home.

The romantic portion of the relationship ended in December 2004, but Kvasne continued to live there.  D.J. indicated that pursuant to their usual living arrangement, she continued to pay most of the expenses, but he contributed to the household by giving her money for incidentals and by making home repairs.

In February 2005, D.J. asked Kvasne to find another place to live "by springtime." She testified that on the evening of February 5, he arrived at home angry.  Apparently, he had been thinking about her request but "couldn't accept that." He indicated that he believed she "had taken advantage of him because he put the furnace in," which had cost him a significant amount of money.

D.J. testified that although she attempted to walk away from the argument, Kvasne started to "push [her] around." After she nearly fell into a piece of furniture, he grabbed her arms and shoved her onto her knees.  She retaliated by "grabb[ing] him by the crotch of his pants." He "jumped backwards" to avoid her hands, then forcefully "poked" her with all the fingers of his hand, jamming them as a unit into the side of her face in the area of her jaw.

When she indicated that his action hurt, he stated that it "was just a poke"; he proceeded to demonstrate that he could have done more damage if he wished by throwing her down, straddling her, and with

2

his left hand, pinning her arms to the floor over her head.  He then
"slapped [her] in the side of [her] face with his right hand."

D.J. threatened to call the police.  Kvasne responded that he would
remain where he was until she withdrew her threat.  After about a
minute, she relented.  At that point, he permitted her to stand.  In
order to keep peace with him thereafter, she acted as if the argument
was over.

A few days later, when Kvasne resumed working, she removed his
personal belongings from her home and changed the locks so that he
could not use his key.  Furthermore, she decided to file a criminal
complaint against him so that he would not seek to return.

Kvasne eventually was indicted on two counts.  Count one charged him
with domestic violence in violation of R.C. 2919.25; count two charged
him with kidnapping in violation of R.C. 2905.01.  The indictment
contained both a notice of prior conviction and a repeat-violent-
offender specification for his 1985 conviction for the crime of voluntary
manslaughter.

Kvasne entered a written waiver of his right to a jury trial; therefore,
the trial court acted as the trier-of-fact.  Kvasne stipulated to the fact
of his prior conviction.  At the conclusion of the proceeding, the trial
court dismissed count one, finding that under the circumstances of the
facts proved in the case, Ohio's "new constitutional amendment"
precluded a conviction of Kvasne pursuant to R.C. 2919.25.  As to
count two, over his objection, the court found Kvasne not guilty of
kidnapping, but guilty of the "lesser included" offense of abduction.

The court ultimately sentenced Kvasne on his conviction for abduction
to a two-year prison term.

(Doc. 6, RX 11, at 2-5; State v. Kvasne, 169 Ohio App.3d 167, 170-171, 862 N.E.2d

171, 173-174 (Ohio Ct. App. 2006).)

Both the state and Kvasne filed timely appeals.  The state appealed the

dismissal of Count One of the indictment, doc. 6, RX 8, and Kvasne appealed his

conviction, doc. 6, RX 9.  The appeals were consolidated on Aug. 30, 2005.  (Doc. 6,

RX 7.)  The state's single assignment of error was:

> 1.  The trial court erred when it dismissed Count One of the indictment based on Ohio Constitution Section XV, Article 11, "Issue One."

(Doc. 6, RX 8.)  In his appeal, Kvasne raised five assignment of error:

> 1.  The State failed to present sufficient evidence to sustain a conviction.
>
> 2.  Appellee's conviction is against the manifest weight of the evidence.
>
> 3.  The trial court erred by finding Appellee guilty of abduction as a lesser included of kidnapping.
>
> 4.  The trial court erred by not enforcing Appellee's subpoena of the police officer as a defense witness after he appeared the previous day with his subpoena.
>
> 5.  The trial court erred in sentencing Appellee to more than the minimum prison sentence when he had not previously served a prison term.

(Doc. 6, RX 9.)  On Oct. 16, 2006, the court of appeals affirmed Kvasne's conviction,

but reversed and remanded the dismissal of Count One.  (Doc. 6, RX 11; State v.

Kvasne, 169 Ohio App.3d 167, 862 N.E.2d 171 (Ohio Ct. App. 2006).)

On Nov. 30, 2006, Kvasne appealed his conviction to the Supreme Court of

Ohio, setting forth five propositions of law:

> 1.  Abduction is not a lesser included offense of kidnapping.
>
> 2.  An offense is not a lesser included offense of another if the greater offense, can, as statutorily defined in the abstract, be committed without the lesser offense, as statutorily defined, also being committed.
>
> 3.  Appellate counsel is ineffective for failing to raise constitutional arguments associated with state law claims.

4

> 4.  When the trial court states in open court that it has acquitted a defendant of a crime, the State may not appeal from the subsequent judgment, even if that judgment states that the court "nolled" the charge.
>
> 5.  By virtue of Section XV, Article 11 of the Ohio Constitution, R.C. 2919.25, prohibiting domestic violence, does not apply to unmarried cohabitants without children.

(Doc. 6, RX 12.)  The court accepted the appeal on the fifth proposition of law only, but held the case pending a resolution of State v. Carswell.  (Doc. 6, RX 14; State v. Kvasne, 113 Ohio St.3d 1413, 862 N.E.2d 842 (2007).)

On July 25, 2007, the Supreme Court of Ohio issued its decision in State v. Carswell, holding that:

> The term "person living as a spouse" as defined in R.C. 2919.25 merely identifies a particular class of persons for the purposes of the domestic-violence statutes. It does not create or recognize a legal relationship that approximates the designs, qualities, or significance of marriage, as prohibited by Section 11, Article XV of the Ohio Constitution.

State v. Carswell, 114 Ohio St.3d 210, 871 N.E.2d 547 (2007) (syllabus).  The court explained:

> While the intent of the domestic-violence statute is to protect persons from violence by close family members or residents of the same household, the intent of the marriage amendment ["Issue One"] was to prevent the creation or recognition of a legal status that approximates marriage through judicial, legislative, or executive action. The statute and the constitution are not in conflict.

Carswell, 114 Ohio St.3d at 216, 871 N.E.2d at 553-554.  In accordance with that decision, the court subsequently affirmed the appellate court judgment on Sept. 19,

2007.  (Doc. 6, RX 19; In re Ohio Domestic-Violence Statute Cases, 114 Ohio St.3d 430, 431, 872 N.E.2d 1212 (2007).)

On remand, Kvasne moved to dismiss Count One, the charge of domestic violence.  (Doc. 6, RX 20.)  On July 11, 2008, the trial court found that his arguments had already been decided by the court of appeals, and that the court was bound by the appellate court's ruling to carry the judgment into execution.  (Doc. 6, RX 22.)

On Aug. 20, 2008, Kvasne filed this petition for a writ of habeas corpus.[1] (Doc. 1.)

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus.  Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court.  The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as

---

[1] Meanwhile, in state court, Kvasne filed another motion to dismiss Count One, on speedy trial grounds, and another motion to dismiss based on an allied-offenses theory, on Sept. 8, 2008.  (Doc. 6, RX 23-24.)  Neither of these claims appear in his habeas petition.

> determined by the Supreme Court of the United States," or (2)
> "involved an unreasonable application of ... clearly established Federal
> law, as determined by the Supreme Court of the United States."
> Under the "contrary to" clause, a federal habeas court may grant the
> writ if the state court arrives at a conclusion opposite to that reached
> by this Court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable
> facts.  Under the "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but unreasonably
> applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002).  See also Lorraine v. Coyle, 291

F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court

precedent "if the state court applies a rule that contradicts the governing law set

forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.  See also Price v.

Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court

considers the state decision to be erroneous or incorrect.  Rather, the federal court

must determine that the state court decision is an objectively unreasonable

application of federal law.  Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

Several of the arguments put forward by Kvasne allege violations of Ohio

law.  The question before this federal habeas court is whether the state court

decision was contrary to, or involved an unreasonable application of, clearly

established federal law, as determined by the Supreme Court of the United States.

Federal habeas relief is not available for a claimed violation of state law, thus any

7

alleged violation of Ohio law is not properly before this court.  See Lewis v. Jeffers, 497 U.S. 764, 780 (1990).


## III.  LESSER INCLUDED OFFENSE

The second ground of the petition is that Kvasne's conviction for abduction as a lesser offense of kidnapping violated federal due process.  (Doc. 1, at § 12.)  The respondent argues that this claim was originally presented as a state law claim, which is not cognizable for federal habeas relief.  (Doc. 6, at 15-20.)

On appeal, Kvasne presented his argument that the trial court erred by finding him guilty of abduction as a lesser included offense purely as a matter of state law.  Kvasne raised no federal issues regarding this claim.  (Doc. 6, RX 9, at 20-21.)  Similarly, the appellate court addressed his arguments in terms of statutory interpretation.[2]  See doc. 6, RX 11, at 10-18; Kvasne, 169 Ohio App.3d at 174-178, 862 N.E.2d at 177-180.

---

[2] The court of appeals recognized there is a conflict among Ohio courts as to whether abduction is a lesser included offense of kidnapping.  Doc. 6, RX 11, at 10; Kvasne, 169 Ohio App.3d at 174, 862 N.E.2d at 177.  See State v. Breeden, No. 84663, 2005 WL 315370, at *6-*7  (Ohio Ct. App. Feb. 10, 2005) (citing cases). There is ample authority for considering abduction to be a lesser included offense. See, e.g., State v. Maurer, 15 Ohio St.3d 239, 270-271, 473 N.E.2d 768, 796 (1984), cert. denied, 472 U.S. 1012 (1985) (kidnapping defendant was not entitled to instruction "on the lesser included offense of abduction"); State v. Schmidt, 100 Ohio App.3d 167, 170-171, 652 N.E.2d 254, 256 (Ohio Ct. App. 1995); State v. Kelly, 89 Ohio App.3d 320, 325, 624 N.E.2d 733, 736 (Ohio Ct. App. 1993); State v. Turner, No. 49866, 1985 WL 4355, at *9 (Ohio Ct. App. Dec. 12,1985) (abduction is lesser included offense of kidnapping).

A habeas petitioner cannot obtain relief unless he has completely exhausted his available state remedies.  Coleman v. Thompson, 501 U.S. 722, 731 (1991); Buell v. Mitchell, 274 F.3d 337, 349 (6th Cir. 2001) (citing Coleman v. Mitchell, 244 F.3d 533, 538 (6th Cir.), cert. denied, 534 U.S. 977 (2001)).  The exhaustion requirement is satisfied when the highest court in the state has been given a full and fair opportunity to rule on the petitioner's claims.  Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994) (citing Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990)).

This court does not have jurisdiction to consider a federal claim in a habeas petition which was not fairly presented to the state courts.  Baldwin v. Reese, 541 U.S. 27 (2004); Jacobs v. Mohr, 265 F.3d 407, 415 (6th Cir. 2001).  The Sixth Circuit has stated:

> A claim may only be considered "fairly presented" if the petitioner asserted both the factual and legal basis for his claim to the state courts. This court has noted four actions a defendant can take which are significant to the determination whether a claim has been "fairly presented":  (1) reliance upon federal cases employing constitutional analysis;  (2) reliance upon state cases employing federal constitutional analysis;  (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right;  or (4) alleging facts well within the mainstream of constitutional law.

McMeans v. Brigano, 228 F.3d 674, 681 (6th Cir. 2000), cert. denied, 532 U.S. 958 (2001) (citing Franklin v. Rose, 811 F.2d 322, 325-326 (6th Cir. 1987)).  See also Hicks v. Straub, 377 F.3d 538, 552-554 (6th Cir. 2004), cert. denied, 544 U.S. 928 (2005).  To "fairly present" the claim to the state courts, a habeas petitioner must

present his claim as a federal constitutional issue, not as an issue arising under state law.  Koontz v. Glossa, 731 F.2d 365, 368 (6th Cir. 1984).

Kvasne did not frame this claim as a federal constitutional issue.  He relied solely on state law arguments in his state appeal.  (In fact, he continues to argue that the court of appeals did not properly follow state law.[3]  See, e.g., doc. 12, at 11-12.)  The petitioner's state appeal did not rely on federal constitutional analysis, nor did his claims implicate a constitutional right.  See doc. 6, RX 9, at 20-21.

Kvasne argues that the state violated his liberty interest, protected by the due process clause, "to not be subject to an abduction conviction based on a kidnapping indictment."  (Doc. 12, at 10.)  Not surprisingly, he presents no authority for the proposition that a conviction on a (disputed) lesser-included offense violates due process.

The Supreme Court has rejected the argument that an alleged statutory misinterpretation of Ohio's criminal statutes creates a federal due process violation.  Engle v. Isaac, 456 U.S. 107, 121 n.21 (1982) ("mere error of state law" is not denial of due process).  See generally Bagby v. Sowders, 894 F.2d 792, 795-797 (6th Cir.) (en banc), cert. denied, 496 U.S. 929 (1990) (citing cases) (failure to instruct on

---

[3] The Barnes case relied on by Kvasne addressed a question of first impression, "whether felonious assault with a deadly weapon is a lesser included offense of attempted murder," and in so doing discussed general principles of lesser included offenses.  State v. Barnes, 94 Ohio St.3d 21, 28, 759 N.E.2d 1240, 1247 (2002).  The court did not address, nor resolve, the conflict among Ohio courts as to whether abduction is a lesser included offense of kidnapping.  See, e.g., Breeden, 2005 WL 315370, at *6-*7.

lesser included offense not cognizable in federal habeas).  See also Scott v. Elo, 302 F.3d 598, 606 (6th Cir. 2002), cert. denied, 537 U.S. 1192 (2003).

## A.  Ineffective assistance of counsel

Kvasne argues that his failure to exhaust his federal claim can be excused by the alleged ineffective assistance of appellate counsel.  (Doc. 12, at 9-10.)

Ineffective assistance of counsel can serve as cause to overcome procedural default.  Smith v. Ohio, Dept. of Rehab. and Corr., 463 F.3d 426, 432 (6th Cir. 2006) (citing Deitz v. Money, 391 F.3d 804, 809 (6th Cir. 2004)).  An ineffective assistance of counsel claim asserted as cause for another procedurally defaulted federal claim can itself be procedurally defaulted.  Edwards v. Carpenter, 529 U.S. 446, 453 (2000).  "A claim of ineffective assistance of counsel must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."  Deitz, 391 F.3d at 809 (citing Edwards, 529 U.S. at 452).

The Ohio Supreme Court has held that "issues of ineffective assistance of appellate counsel must be raised at the first opportunity to do so."  Monzo v. Edwards, 281 F.3d 568, 578 (6th Cir. 2002) (quoting State v. Williams, 74 Ohio St.3d 454, 455, 659 N.E.2d 1253, 1254 (1996) (per curiam)).  Under Ohio law, claims of ineffective assistance of appellate counsel must be raised in a motion to re-open his appeal before the Ohio Court of Appeals.  Monzo, 281 F.3d at 577 (citing State v. Murnahan, 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992)); Ohio App. R. 26(B).  Such a motion must be filed in the court of appeals within 90 days of the appellate judgment.  State v. Lamar, 102 Ohio St.3d 467, 468, 812 N.E.2d 970 (2004) (per

11

curiam), cert. denied, 543 U.S. 1168 (2005); State v. Reddick, 72 Ohio St. 3d 88, 90, 647 N.E.2d 784, 786 (1995) (per curiam).

Kvasne contends that, under the law as applied at the relevant time by the Eighth District, Ohio Court of Appeals, he "could only raise his appellate ineffectiveness claim in the Supreme Court of Ohio." (Doc. 12, at 13-15.) Kvasne brings the court's attention to several cases.

In State v. Jackson, the court of appeals denied Jackson's Rule 26(B) motion to reopen on several grounds. State v. Jackson, No. 75354, 2002 WL 31398656 (Ohio Ct. App. Oct. 21, 2002). First of all, the court noted that the application was untimely filed, having been filed more than two years after the journalization of the appellate judgement. Jackson, 2002 WL 31398656, at *1. In addition, the application did not include a sworn statement as required by Ohio App. R. 26(B)(2)(d). Id. Also, the application was barred by res judicata, because Jackson had an earlier opportunity to raise the claim of ineffective assistance through an appeal to the Supreme Court of Ohio. Id. at *2. Finally, the court denied the application on the merits. Id. at *2-*3. Jackson cannot be read for the proposition that an appellant can "only" raise his claim in the state supreme court. (Doc. 12, at 13.) Rather, the court held that the Rule 26(B) application was untimely, but Jackson also had the "prior opportunity" to raise the claim through an appeal to the Supreme Court of Ohio. Jackson, 2002 WL 31398656, at *2.

In State v. House, the court of appeals denied House's Rule 26(B) motion to reopen on several grounds. State v. House, No. 80939, 2003 WL 22208353 (Ohio Ct.

12

App. Sept. 22, 2003). First, the court found the application did not include a

sufficient statement as to the basis of the claim, as required by Ohio App. R.

26(B)(2)(d). House, 2003 WL 22208353, at *1. The court also denied the application

on the merits. Id. at *2. However, the court also found that the application was

barred by res judicata, because House did not raise the ineffective assistance claim

in an appeal to the Supreme Court of Ohio:

> The issue of whether appellate counsel provided effective assistance
> must be raised at the earliest opportunity to do so. State v. Williams
> (1996), 74 Ohio St.3d 454, 659 N.E.2d 1253. In this case, applicant
> possessed an earlier opportunity to contest the performance of his
> appellate counsel in a claimed appeal of right to the Supreme Court of
> Ohio. Applicant did not appeal the decision of this court to the
> Supreme Court of Ohio . . .

House, 2003 WL 22208353, at *1. (The court did not note whether the application

was untimely.)

In State v. Jones, the court noted that Jones had filed a timely application for

reopening pursuant to Rule 26(B). State v. Jones, No. 83852, 2005 WL 730058, at

*1 (Ohio Ct. App. Mar. 30, 2005). Nevertheless, the court denied the application as

a result of the doctrine of res judicata. Jones, 2005 WL 730058, at *1. (The court

also found that Jones failed to establish his ineffectiveness claim on the merits. Id.

at *1-*2.) The court found that:

> Jones possessed a prior opportunity to challenge the alleged
> ineffectiveness of his appellate counsel through a direct appeal to the
> Supreme Court of Ohio. Jones, however, failed to file an appeal with
> the Supreme Court of Ohio . . .

Jones, 2005 WL 730058, at *1.

13

The implication of the appellate courts' reasoning in cases such as House and Jones is unclear.  Pursuant to Ohio Supreme Court Rule of Practice II, Section 2(A)(1), a timely appeal to the Ohio Supreme Court must be filed within 45 days of the appellate judgment.  A Rule 26(B) motion to re-open an appeal must be filed in the court of appeals within 90 days of the appellate judgment.  Thus, the "earliest opportunity," Williams, 74 Ohio St.3d at 455, 659 N.E.2d at 1254, to file a claim of ineffective assistance of appellate counsel under this reasoning would almost always be to seek review in the state high court.

The practical effect of the reasoning of cases such as House and Jones was to truncate the filing period for a Rule 26(B) motion.  Presumably, a Rule 26(B) application filed within 44 days would pass muster as filed at the "earliest opportunity," although the rule itself allows a 90-day filing period.  Such an application filed on the 46th day would have been barred as having missed the Supreme Court filing deadline, as the "earliest opportunity" to file the claim.

In State v. Davis, the appellant had filed both a timely appeal to the high court, and a timely application for reopening.  State v. Davis, 119 Ohio St.3d 422, 423, 894 N.E.2d 1221, 1222 (2008).  In both, he asserted a claim of ineffective assistance of appellate counsel.  Id. at 423, 894 N.E.2d at 1222.  The Supreme Court had declined to accept the discretionary appeal.  Nevertheless, the court of appeals denied the application to reopen on the basis of res judicata, stating that Davis "could have" raised his claims in his appeal to the state high court.  Id. at 423-424, 894 N.E.2d at 1222-1223.

14

The Davis court stated that res judicata would have barred Davis's Rule 26(B) application if the high court had considered his ineffectiveness claim on the merits. Id. at 427, 894 N.E.2d at 1225. However, the court had not considered his claim on the merits. "When this court determines whether or not to accept jurisdiction in a particular case, it is not rendering a decision on the merits." Id. at 427, 894 N.E.2d at 1225. The Ohio Supreme Court thus ruled:

> The filing of a motion seeking a discretionary appeal in this court does not create a bar to a merit ruling on a timely filed application to reopen an appeal claiming ineffective assistance of appellate counsel under App.R. 26(B).

Davis, 119 Ohio St.3d at 423, 894 N.E.2d at 1222 (syllabus). See also Muntaser v. Bradshaw, No. 3:05CV751, 2009 WL 4895662, at *3 (N.D. Ohio Dec. 21, 2009); State v. Robinson, No. 89136, 2009 WL 941768, at *1-*2 (Ohio Ct. App. Apr. 6, 2009) (applying Davis).

The court also noted:

> Because a claim for ineffective assistance of appellate counsel arises in the appellate court, and because this court's jurisdiction in most cases is discretionary, if this court's denial of jurisdiction were considered res judicata on the issue of ineffective assistance of appellate counsel – thus foreclosing a substantive App.R. 26(B) review – a defendant like Davis would never have an opportunity to fully present his case to any court. That result would run counter to our recognition of effective appellate counsel as a constitutional right guaranteed to all defendants.

Davis, 119 Ohio St.3d at 427-428, 894 N.E.2d at 1226.

Although Davis was decided after the relevant periods for Kvasne's appeals, it does reaffirm that ordinarily "a claim for ineffective assistance of appellate

15

counsel arises in the appellate court." Davis, 119 Ohio St.3d at 427, 894 N.E.2d at 1226.  See also Monzo, 281 F.3d at 577 (claims of ineffective assistance of appellate counsel raised in motion to re-open).

Returning, then, to the contention that Kvasne "could only raise his appellate ineffectiveness claim in the Supreme Court of Ohio," the court finds that this assertion is without support in the cases discussed above.  In several cases, the appellant raised the claim before both the court of appeals and the state high court.  See, e.g., Keith v. Voorhies, No. 1:06CV2360, 2009 WL 185765, at *2 (N.D. Ohio Jan. 23, 2009); Davis, 119 Ohio St.3d at 423, 894 N.E.2d at 1222; Jackson, 2002 WL 31398656, at *1.  Also, as discussed earlier, presumably a Rule 26(B) application filed within the first 45 days would have been addressed.

Here, Kvasne did attempt to raise ineffective assistance of appellate counsel as the third proposition of law in his appeal to the Supreme Court of Ohio.  (Doc. 6, RX 12.)  The court declined to address that issue, doc. 6, RX 14, thus the Ohio courts never considered his claim on the merits, and the court will consider that issue.  See, e.g., Keith, 2009 WL 185765, at *9; Davis, 119 Ohio St.3d at 423, 894 N.E.2d at 1222 (syllabus).

On appeal to the state high court, Kvasne raised the ineffectiveness issue in a perfunctory manner:  "Mr. Kvasne's appellate counsel raised the state law issues presented in the first two propositions of law, but he failed to raise any related federal claims."  (Doc. 6, RX 12, at 7-8.)

16

Under the Sixth Amendment to the U.S. Constitution, "the right to counsel is the right to effective assistance of counsel."  Joshua v. DeWitt, 341 F.3d 430, 437 (6th Cir. 2003) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)).

The Sixth Circuit discussed the general standard for ineffective assistance of counsel in Monzo v. Edwards:

> To establish ineffective assistance of counsel under Strickland,[4] the defendant must show that his counsel's performance fell below an objective standard of reasonableness and that his counsel's errors were so serious as to prejudice the defendant.  Review of counsel's performance is highly deferential and requires that courts "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."  To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."

Monzo, 281 F.3d at 579 (internal citations omitted).  See generally Strickland, 466 U.S. at 689 (two-part test).  A criminal appellant is constitutionally entitled to the effective assistance of counsel in his direct appeal, as well as at trial.  Evitts v. Lucey, 469 U.S. 387 (1985).

Kvasne argues that appellate counsel should have raised as a federal claim "a winning assignment of error – that his conviction violated a state-created liberty interest."  (Doc. 12, at 9-10; see also doc. 6, RX 12, at 6-7.)  As discussed earlier, Kvasne presents no authority for the proposition that a conviction on a (disputed) lesser-included offense violates federal due process.

---

[4] Strickland v. Washington, 466 U.S. 668 (1984).

17

Appellate counsel is not ineffective for failing to raise every colorable claim. Wilson v. Hurley, No. 03-3481, 2004 WL 1941300 (6th Cir. Aug. 30, 2004), cert. denied, 543 U.S. 1160 (2005); Coleman v. Mitchell, 268 F.3d 417, 430 (6th Cir.), cert. denied, 535 U.S. 1031 (2001) (citing Jones v. Barnes, 463 U.S. 745 (1983)). Only when the issues not presented are clearly stronger than those presented will the presumption of effective assistance of counsel be overcome. Caver v. Straub, 349 F.3d 340, 348 (6th Cir. 2003); Coleman, 268 F.3d at 430 (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)). The court does not find that Kvasne has demonstrated that appellate counsel was ineffective for failing to present the due process argument.

Kvasne has failed to establish ineffective assistance of counsel as cause to overcome his procedural default. Because Kvasne has not shown cause, it is unnecessary to consider the issue of prejudice. Murray v. Carrier, 477 U.S. 478, 494 (1986); Shabazz v. Ohio, 149 F.3d 1184, 1998 WL 384559, at *1 (6th Cir. June 18, 1998) (TABLE, text in WESTLAW).

The petition should not be granted on the second ground because the federal claim was not fairly presented in the state courts.


## IV.  DOUBLE JEOPARDY

The first ground of the petition is that there will be a double jeopardy violation if Kvasne is required to go to trial on the domestic violence count. (Doc. 1,

at § 12.)  The respondent contends that this claim is without merit.  (Doc. 6, at 11-14.)

The Double Jeopardy Clause of the Constitution protects a defendant from being placed in jeopardy twice for the same offense.  Arizona v. Washington, 434 U.S. 497, 503 (1978) (citing Benton v. Maryland, 395 U.S. 784 (1969)).  "The prohibition is not against being twice punished, but against being twice put in jeopardy."  Price v. Georgia,  398 U.S. 323, 326 (1970) (quoting Ball v. United States, 163 U.S. 662, 669 (1896)).  The constitutional protection against double jeopardy is "designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense."  Saylor v. Cornelius, 845 F.2d 1401, 1406 (6th Cir. 1988) (quoting Green v. United States, 355 U.S. 184, 187-188 (1957)).

In Fifth Amendment terms, "jeopardy" denotes the risk of criminal prosecution.  Breed v. Jones,  421 U.S. 519, 528 (1975).  A criminal defendant is placed in jeopardy once the defendant is put on trial before the trier of the facts, whether jury or judge.  United States v. Jorn, 400 U.S. 470, 479 (1971).  "This state of jeopardy attaches when a jury is empaneled and sworn, or, in a bench trial, when the judge begins to receive evidence."  United States v. Martin Linen Supply Co., 430 U.S. 564, 569 (1977) (citing Illinois v. Somerville, 410 U.S. 458, 471 (1973)).  See also Serfass v. United States, 420 U.S. 377, 388 (1975) (in nonjury trial, jeopardy attaches when court begins to hear evidence).

19

"The constitutional protection against double jeopardy unequivocally prohibits a second trial following an acquittal.  The public interest in the finality of criminal judgments is so strong that an acquitted defendant may not be retried even though 'the acquittal was based upon an egregiously erroneous foundation.'" Washington, 434 U.S. at 503 (citing Fong Foo v. United States, 369 U.S. 141, 143 (1962)).  Thus, where the innocence of the defendant has been confirmed by a final judgment, there is a conclusive presumption that a second trial would be unfair.  Id.

The Supreme Court in Green v. United States stated that "it is not even essential that a verdict of guilt or innocence be returned for a defendant to have once been placed in jeopardy so as to bar a second trial on the same charge." Green, 355 U.S. at 188; Walck v. Edmondson, 472 F.3d 1227, 1235 (10th Cir. 2007).

The state trial judge's characterization of her own action does not control the classification of that action for double jeopardy purposes.  United States v. Scott, 437 U.S. 82, 96 (1978).  Whether the Double Jeopardy Clause bars a second trial "is not determined by the characterization of a dismissal under state law, nor by the trial judge's personal understanding in this regard."  Mannes v. Gillespie, 967 F.2d 1310, 1316 (9th Cir. 1992), cert. denied, 506 U.S. 1048 (1993) (citing Smalis v. Pennsylvania, 476 U.S. 140, 144 n. 5 (1986); Scott, 437 U.S. at 96).

For example, the Supreme Court has found that what constitutes an "acquittal" is not controlled by the form of the judge's action.  Martin Linen, 430 U.S. at 571.  Rather, it must be determined by "whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of

20

the factual elements of the offense charged."  Id.  Accord, Scott, 437 U.S. at 97;

United States v. Hospital Montefiores, Inc., 575 F.2d 332, 333 n.1 (1st Cir. 1978).

In Martin Linen, the trial court "evaluated the Government's evidence and

determined that it was legally insufficient to sustain a conviction."  Martin Linen,

430 U.S. at  572.  The court of appeals found that this determination triggered

double jeopardy protection, and the Supreme Court affirmed.  Id. at 572-576.

In United States v. Jenkins, at the close of evidence following a bench trial,

the trial court directed that the indictment be dismissed and the defendant

discharged.  United States v. Jenkins, 420 U.S. 358, 362 (1975).  The Supreme

Court "had difficulty, as did the Court of Appeals in that case, in characterizing the

precise import of the District Court's order dismissing the indictment."  Scott, 437

U.S. at 97 n.9 (discussing Jenkins).  The Court in Jenkins found:

> Here there was a judgment discharging the defendant, although we
> cannot say with assurance whether it was, or was not, a resolution of
> the factual issues against the Government.  But it is enough for
> purposes of the Double Jeopardy Clause, and . . . that further
> proceedings of some sort, devoted to the resolution of factual issues
> going to the elements of the offense charged, would have been required
> upon reversal and remand.  Even if the District Court were to receive
> no additional evidence, it would still be necessary for it to make
> supplemental findings.  The trial, which could have resulted in a
> judgment of conviction, has long since terminated in respondent's
> favor.  To subject him to any further such proceedings at this stage
> would violate the Double Jeopardy Clause.

Jenkins, 420 U.S. at 369-370 (Rehnquist, J.).

Kvasne argues that he was acquitted of domestic violence in the trial court,

thus, he cannot be twice tried for the same crime, without a violation of the Double

21

Jeopardy Clause.  (Doc. 12, at 4-8.)  The respondent argues that Count One was

dismissed before any verdict was rendered.  (Doc. 6, at 11.)

The state court of appeals rejected Kvasne's claim that he had been

acquitted:

> Kvasne counters with the assertion that the trial court in this case did
> not simply dismiss the charge, but, rather, acquitted him of it.  The
> record read in its entirety, however, does not support his assertion.
>
> In considering Kvasne's motion for acquittal at the close of the
> evidence, the trial court stated that "[p]rior to announcing [its] verdict
> on count two" of the indictment, it wanted the record to reflect that in
> its view, the state provided evidence in its case-in-chief that only
> barely met the elements[5] to prove the crime of domestic violence.
> Nevertheless, acquittal was not the appropriate action; instead, "under
> the Court's reading of the law, [it could]n't do that" because "as far as
> the Court [was] concerned," an acquittal of Kvasne was "the easy way
> out."
>
> The court explained its reasoning at some length, indicating that
> because the evidence demonstrated that Kvasne and the victim were
> unmarried, "given that the voters of the [S]tate of Ohio have chosen"
> not to "recognize" such a relationship pursuant to the "new
> constitutional amendment," * * * count one [was] dismissed, prior to
> [the] announc[ement of the] verdict." (Emphasis added.)
>
> At one point during the court's foregoing discourse, it misspoke, using
> the words that it was "ordering an acquittal."  The court clearly
> intended, however, to dismiss the charge of domestic violence on the
> basis of its view that the offense could not be supported under the new
> constitutional amendment.  This is further evidenced by the court's
> journal entry, which states that count one was "nolled," a word that
> connotes the intent to dismiss rather than to acquit.  Since the court

---

[5]  In fact, the court's exact words were:  ". . . the Court could enter finding of
not guilty of domestic violence, as the trier of fact, given that the state failed to
meet the burden, beyond a reasonable doubt, as to the elements of domestic
violence." (Doc. 13, Tr. 320.)

speaks only through its journal entry, Kvasne's counter-argument is rejected.

(Doc. 6, RX 11, at 7-8; Kvasne, 169 Ohio App.3d at 172-173, 862 N.E.2d at 175-176.)

The record establishes several relevant facts.  First, Kvasne was subject to a bench trial on Count One, domestic violence, a violation of Ohio Rev. Code § 2919.25.  The indictment charged that Kvasne "did knowingly cause or attempt to cause physical harm to Dawn Judson, a family or household member."  (Doc. 6, RX 1, indictment.)  The language of the indictment paralleled the statutory definition of Domestic Violence:  "No person shall knowingly cause or attempt to cause physical harm to a family or household member."  Ohio Rev. Code § 2919.25(A).

Second, at the close of evidence, in lieu of a verdict, the trial court announced an "acquittal on the charge of domestic violence."  (Doc. 13, Transcript (Tr.) 321) Shortly thereafter, the court stated "count one of this indictment is dismissed by the Court, prior to announcing its verdict."  (Tr. 322.)  Finally, the court summarized: "... the Court has entered a finding of guilt as to the lesser included offense of abduction, in count two, and dismissed count one, the domestic violence."  (Tr. 323.) The court's Journal Entry read:  "Count(s) 1 is/are nolled."  (Doc. 6, RX 5.)

### A.  Was Kvasne "acquitted" of Count One?

The first issue is whether the trial court's action consisted of an "acquittal" of Count One.  As noted above, the trial court's pronouncements at trial are not clear on this issue.  The court announced an "acquittal on the charge of domestic violence" at one point, but otherwise referred to its action as a dismissal.

23

The court of appeals found that the trial court "clearly intended . . . to dismiss the charge of domestic violence on the basis of its view that the offense could not be supported under the new constitutional amendment."  (Doc. 6, RX 11, at 8; Kvasne, 169 Ohio App.3d at 173, 862 N.E.2d at 176.)  The court ruled that, "[s]ince the court speaks only through its journal entry," Kvasne's argument that he was acquitted was rejected.  Id.

The Ohio Supreme Court addressed the finality of oral rulings from the bench in Schenley v. Kauth, 160 Ohio St. 109, 113 N.E.2d 625 (1953) (syllabus), which held that:  "A court of record speaks only through its journal and not by oral pronouncement or mere written minute or memorandum."  The Ohio Supreme Court has followed Schenley in a variety of circumstances over the years.  See State ex rel. Marshall v. Glavas, 98 Ohio St.3d 297, 297-298, 784 N.E.2d 97, 98-99 (2003) (citing Schenley) (any oral pronouncements by judge subject to revision before journalization); State v. Keenan, 81 Ohio St.3d 133, 154, 689 N.E.2d 929, 948 (1998), cert. denied, 525 U.S. 860 (1998) (citing Schenley) (judge's statement from bench, not incorporated into journal entry, has no force); Atkinson v. Grumman Ohio Corp., 37 Ohio St.3d 80, 82-83, 523 N.E.2d 851, 854 (1988) (citing Schenley) ("not inconceivable" that judge in any case might change mind between time of announcing decision and  filing of judgment entry).  See also State v. Vickers, No. 01CA007928, 2002 WL 1598130, at *3 (Ohio Ct. App. July 17, 2002) (Carr, J.) ("a court speaks only through its journal entries"); Robinson v. Clarke, 939 F.2d 573,

24

577 (8th Cir. 1991) (trial court's oral ruling has no final or binding effect unless formally incorporated into judgment).

Under Ohio law, then, and as the court of appeals ruled, Kvasne was not acquitted on Count One.  This does not necessarily end the double jeopardy analysis, though.

In a bench trial, as here, jeopardy attaches "when the judge begins to receive evidence."  Martin Linen, 430 U.S. at 569; see also Serfass, 420 U.S. at 388 (1975) (same).  No mistrial was declared, and the trial proceeded to the close of evidence. The Sixth Circuit has recognized that most of the Supreme Court's double jeopardy cases "do not contemplate the situation where a trial ends without either an explicit conviction or an explicit acquittal."  Saylor, 845 F.2d at 1406.

At the verdict phase of the trial, the court announced that it could enter a finding of not guilty as the trier of fact, because "the state failed to meet the burden, beyond a reasonable doubt, as to the elements of domestic violence."  (Doc. 13, Tr. 320.)  However, the court stated that, "under the Court's reading of the law, I can't do that."  (Tr. 321.)  Instead, the court dismissed Count One, prior to announcing its verdict.  (Tr. 321-322.)  The court based its ruling on the following reasoning:

> The two people involved in this incident are, by no means . . . fitting the elements of that which is required for domestic violence.
>
> These two people were not domestic partners.  They were not even household members under the definition of household members, as far as the domestic violence law is concerned.

(Tr. 321.)  Under that theory, the court dismissed Count One.  (Tr. 322.)

Whether the Double Jeopardy Clause bars a second trial "is not determined by the characterization of a dismissal under state law, nor by the trial judge's personal understanding in this regard." Mannes, 967 F.2d at 1316 (citing Smalis, 476 U.S. at 144 n. 5; Scott, 437 U.S. at 96).  Instead, it must be determined by "whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." Martin Linen, 430 U.S. at 571.  Accord, Scott, 437 U.S. at 97; Hospital Monteflores, 575 F.2d at 333 n.1.  The fact that an acquittal may result from "erroneous evidentiary rulings or erroneous interpretations of governing legal principles" does not alter its essential character.  Scott, 437 U.S. at 98.

In Martin Linen, the trial court "evaluated the Government's evidence and determined that it was legally insufficient to sustain a conviction." Martin Linen, 430 U.S. at  572.  The court of appeals found that this determination triggered double jeopardy protection, and the Supreme Court affirmed.  Id. at 572-576.

In Jenkins, the Supreme Court found that it was enough for purposes of the Double Jeopardy Clause, after the dismissal at the close of evidence, "that further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged, would have been required upon reversal and remand." Jenkins, 420 U.S. at 370 (Rehnquist, J.).

In this case, it appears that the trial court found that the prosecution had not established the statutory element, specified in the indictment, that the victim was "a family or household member" in relation to the defendant.  (Doc. 13, Tr. 321; see

26

doc. 6, RX 1, indictment; Ohio Rev. Code § 2919.25(A). Thus, the court's ruling, "whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." Martin Linen, 430 U.S. at 571.

Therefore, Kvasne was put to the jeopardy of a full trial, and the essential result of the trial was favorable to him on the charge of domestic violence. See generally Saylor, 845 F.2d at 1407. Kvasne had been in jeopardy of being convicted of domestic violence, and the state "had its opportunity to put its best proof and theories of criminality" before the court, and it is not entitled to a second chance. Saylor, 845 F.2d at 1409. A second trial would necessarily again be "devoted to the resolution of factual issues going to the elements of the [domestic violence] offense charged." Jenkins, 420 U.S. at 370.

A second trial of Kvasne on the domestic violence charge would violate the Double Jeopardy Clause. The rulings of the state courts on this issue resulted in a determination that was contrary to clearly established federal law, as determined by the Supreme Court.


## V. SUMMARY

The petition for a writ of habeas corpus should be granted in part, and denied in part. The petition should be denied on the second ground because the federal due process claim was not fairly presented in the state courts.

27

However, the petition should be granted on the first ground because a second trial of Kvasne on the domestic violence charge (Count One) would violate the Double Jeopardy Clause.

<u>RECOMMENDATION</u>

It is recommended that the petition for a writ of habeas corpus be GRANTED in part, and DENIED in part.

Dated:   Mar. 12, 2010              /s/ Kenneth S. McHargh
                                    Kenneth S. McHargh
                                    United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).